**Randall R. LEWIS, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 91–1332.**

United States Court of Veterans Appeals.

May 18, 1993.

David B. Wiles, Portland, OR, on the brief, for appellant.

James A. Endicott, Gen. Counsel, David T. Landers, Acting Asst. Gen., Counsel, Washington, DC, R. Randall Campbell, Deputy Asst. Gen. Counsel, and Peter M. Donawick, Washington, DC, were on the brief, for appellee.

Before MANKIN, HOLDAWAY and IVERS, Associate Judges.

IVERS, Associate Judge:

Randall R. Lewis appeals from an April 11, 1991, Board of Veterans' Appeals (BVA or Board) decision denying service connection for an acquired psychiatric disorder. *Randall R. Lewis*, BVA 91–11574 (Apr. 11, 1991). The Court has jurisdiction of the case under 38 U.S.C.A. § 7252(a) (West 1991). The Court finds that appellant did not present new and material evidence to warrant reopening his claim for service connection. Accordingly, we affirm the decision of the BVA. In addition, the Court will review the fee agreement filed in this matter only in the context of and for the limited purpose of the fee agreement discussion below.

### FACTUAL BACKGROUND

Appellant served in the United States Air Force from August 6, 1963, to October 2, 1964. R. at 21. On August 31, 1964, in response to concerns about appellant's "[m]arked adjustment problems" in the service, R. at 11; *see also* R. at 17–18, an Air Force psychiatrist offered a diagnosis of "[s]chizoid personality, chronic, moderate, manifested by tic-like activity, difficulty in integrating into useful Air Force career, patterns and traits of a follower, and a

tendency to isolate himself." R. at 11. On October 2, 1964, appellant was found to be "unsuitable for military service because of his instability and lack of a desire to adapt himself to the military environment" and was discharged from service. R. at 19.

On May 17, 1979, appellant applied to a Veterans' Administration (now Department of Veterans Affairs) (VA) regional office (RO) for service connection for paranoid schizophrenia. R. at 30. On May 10, 1983, the Board denied service connection for an acquired psychiatric disorder because it considered that the diagnosis of paranoid or schizoid personality was "not a disability within the meaning of the laws applicable to service connection." R. at 57. Subsequently, appellant resubmitted his claim, and the BVA denied service connection again on July 9, 1986. R. at 112. On November 25, 1986, appellant sought to reopen his claim again. R. at 116. On January 27, 1987, the RO informed appellant that the evidence submitted in connection with the claim was not new and material. R. at 127. He apparently did not appeal this determination. On October 6, 1988, he sought to reopen his claim again. R. at 152–55. In connection with this claim, he submitted an October 11, 1989, letter from a long-time friend, David Garner. R. at 161–62. On August 2, 1990, the RO notified appellant that Mr. Garner's letter was new and material but that "when put in context with the other evidence of record, it does not provide a new factual basis on which to allow your claim." R. at 165. On April 11, 1991, the BVA denied service connection because it found Mr. Garner's letter to be "cumulative." *Lewis*, BVA 91–11574, at 5.

## ANALYSIS

■ Appellant's claim for direct service connection for an acquired psychiatric disorder was previously denied by final BVA decisions on May 10, 1983, R. at 57, and on July 9, 1986, R. at 112, and by a January 14, 1987, rating decision, R. at 126, which he did not appeal. Pursuant to 38 U.S.C.A. § 5108 (West 1991), the Secretary of Veterans Affairs (Secretary) must reopen a previously and finally disallowed claim when "new and material evidence" is presented or secured with respect to that claim. *See* 38 U.S.C.A. § 7104(b) (West 1991). On claims to reopen previously and finally disallowed claims, the BVA must conduct a two-part analysis. *See Manio v. Derwinski*, 1 Vet.App. 140, 145 (1991). First, it must determine whether the evidence presented or secured since the prior final disallowance of the claim is "new and material." *See Colvin v. Derwinski*, 1 Vet.App. 171, 174 (1991). "New evidence" is evidence that is not "merely cumulative" of other evidence in the record. *Ibid.* Evidence is "material" where it is "relevant and probative" and where there is "a reasonable possibility that the new evidence, when viewed in the context of all the evidence, both new and old, would change the outcome." *Ibid.* Whether evidence is "new and material" is a conclusion of law which this Court reviews de novo under 38 U.S.C.A. § 7261(a)(1) (West 1991). *See Masors v. Derwinski*, 2 Vet.App. 181, 185 (1992).

■ The Court holds that appellant did not present new and material evidence to reopen his claim for service connection. In his October 11, 1989, letter, David Garner wrote: "I have read the findings of examining psychiatrists and do agree with their evaluations." R. at 162. This statement only expresses agreement with diagnoses that had been considered prior to the final BVA decisions of May 1983 and July 1986 and the January 1987 rating decision. In his letter, Mr. Garner also wrote that appellant "was not an insane person, or a person with mental problems, or severely adverse psychological conditions before his entry into the United States Air Force." R. at 161. Appellant had previously submitted statements from friends and associates who considered him to be conscientious, intelligent, reliable, and honest prior to service, but who found him to be frustrated and changed during and after service. R. at 34, 38, 40, 59, 61; *see also Mason v. Derwinski*, 2 Vet.App. 526, 527 (1992) (lay statements from acquaintances were cumulative of earlier letters and, therefore, not new). Thus, Mr. Garner's statement is cumulative of previously submitted letters.

In addition, Mr. Garner's letter is not material. As noted above, Mr. Garner

agreed with diagnoses made by examining psychiatrists. R. at 162. Although a "layperson can certainly provide an eye-witness account of a veteran's visible symptoms," *Espiritu v. Derwinski,* 2 Vet.App. 492, 494 (1992), Mr. Garner's statement is not probative of the issue of service connection for an acquired psychiatric disorder because he lacks the medical expertise necessary to provide a diagnosis. *See Espiritu, supra* (lay witness normally not competent to offer probative evidence on matter requiring medical knowledge); *see also Bowers v. Derwinski,* 2 Vet.App. 675, 677 (1992) (standing alone, veteran's own lay opinion that he had ratable psychiatric condition was not sufficient to establish service connection). The Court therefore affirms the BVA's decision regarding the newness and materiality of appellant's evidence.

 Under the terms of the fee agreement in this case, appellant agrees to pay his counsel "$100 per hour for all services performed by Attorney, and $60 per hour for services performed by Legal Assistant(s), plus 20% of any retroactive benefit amount collected." Attorney–Client Fee Agreement at 1 (filed Dec. 27, 1991). Although vested with the power to review fee agreements, *see* 38 U.S.C.A. § 7263(c) (West 1991) (Court, on its own motion or the motion of any party, *may* review fee agreement); *see also* 38 U.S.C.A. § 7263(d) (West 1991) (Court is authorized to reduce a fee where it finds the fee to be "excessive or unreasonable"), the Court should intrude upon such a free and voluntary contract only upon the invitation of the parties or where the fee agreement is patently unreasonable on its face. *See Matter of Smith,* 1 Vet.App. 492, 500 (1991) (Steinberg, J., concurring) (Court should review fee agreements sua sponte "only in exceptional circumstances, such as when there is a substantial question of conformity with the statutory parameters."); *see also Woodbridge Place Apts. v. Washington Square Capital,* 965 F.2d 1429, 1435 (7th Cir.1992) ("courts are generally reluctant to interfere with bargained-for agreements between parties"); *see generally* 7A C.J.S. *Attorney & Client* § 304(a) (1980) ("Where no one challenges the validity of an attor-

ney's contract with a client, or seeks any relief thereunder, the authority of the court to determine the validity of the contract lies dormant."). A fee agreement is a contract between two private parties—an appellant and the appellant's attorney. *See Nagler v. Derwinski,* 1 Vet.App. 297, 304 (1991) (in context of BVA's review of fee agreement, Court remarked that "the parties to a review of a fee agreement are the claimant on the one hand and the attorney on the other."). Therefore, the Court will not ordinarily review sua sponte every fee agreement.

In this case, however, we choose to comment on the fee agreement merely to point out that the particular fee agreement between appellant and his attorney is not unreasonable on its face. *See Matter of the Fee Agreement of Smith,* 4 Vet.App. 487, 497 (1993) (Court held that fee agreement consisting of the sum of $1,000 plus 20% of any past-due benefits awarded was not excessive or unreasonable). Furthermore, as there is no requirement that the Secretary withhold any portion of the fee from past-due benefits, the fee agreement does not fit squarely within the parameters of 38 U.S.C.A. § 5904(d) (West 1991) and, therefore, does not obligate the Secretary to pay appellant's counsel directly from the fund of past-due benefits. *See Matter of the Fee Agreement of Smith, supra; cf. Matter of Smith,* 1 Vet.App. at 500 (Steinberg, J., concurring) (concurring opinion argued that Court review of fee agreement was required because contingent fee agreement calling for payment by Secretary directly to counsel required interpretation of Code Section 5904(d) and, thus, presented exceptional circumstance warranting review). Therefore, the Court reviews the fee agreement in this matter only in the context of and for the purpose of the above discussion of fee agreements.

## CONCLUSION

For the reasons stated above, the April 11, 1991, decision of the BVA is AFFIRMED.