## In the Matter of the Fee Agreement of Kenneth B. MASON, Jr., in Case Number 90–920.

### No. 96–1663.

United States Court of Veterans Appeals.

. Jan. 22, 1999.

Before NEBEKER, Chief Judge, and HOLDAWAY and STEINBERG, Judges.

## ORDER

PER CURIAM:

On December 10, 1996, the appellant, an attorney *Vosefski v. Brown,* 4 Vet.App. 262 (1993) (mem. dec.), appealed an August 12, 1996, decision of the Board of Veterans' Appeals (BVA) regarding a fee agreement, signed on July 25, 1991, for representation before the Department of Veterans Affairs and this Court in that matter, and that matter is currently pending before the Court. On August 11, 1997, the appellant entered into a fee agreement with another attorney, Kenneth M. Carpenter, to represent him before this Court in challenging the BVA decision. On October 16, 1998, this Court, sua sponte, found certain provisions of the 1997 fee agreement to be in violation of this Court's precedent. *In Matter of Fee Agreement of Mason,* 11 Vet.App. 514 (1998) (per curiam order). The Court ordered that this case be held in abeyance and that the appellant file a revised fee agreement that com-

plied with the rule in *Shaw v. Gober*, 10 Vet.App. 498, 505–06 (1997).

On October 23, 1998, counsel Carpenter filed an amended fee agreement, which had been signed on October 22, 1998, by the two attorneys. Upon further consideration of this matter, because the fee agreement in this case is an agreement between two attorneys, the Court will not review it further, *see* 134 CONG. REC. 31469–70 (1988) (statement of Sen. Cranston) (Court review of fee agreements for "reasonableness" under 38 U.S.C. § 7263 "provide[s] protection [to Department of Veterans Affairs claimants] against any overreaching on the part of attorneys" ), and will lift the stay imposed by the Court's October 16, 1998, order.

On consideration of the foregoing, it is

ORDERED that the stay imposed by the Court's October 16, 1998, order is lifted.

NEBEKER, Chief Judge, concurring:

This is an appeal from the Secretary's refusal to pay a fee from past-due benefits to Mr. Mason under a fee agreement between the veteran and Mr. Mason. Mr. Mason has employed Mr. Carpenter to represent him in the appeal, and they have filed their fee agreement which was the subject of our first order. The amended fee agreement reveals recalcitrance by attorney and client who have ignored our first order to file an amended agreement without an offending "double dipping" provision.

Admittedly I joined the first order, for our decision in *Shaw* makes a so-called "double dipping" provision unlawful and thus unreasonable. Upon reflection, however, we now see this matter in a different light. The statutory oversight role of this Court of fee agreements was intended, it would appear, to ensure against unreasonable legal fees being charged to benefits claimants by attorneys. This matter is quite something else. It is an agreement between two attorneys—one the client and the other his advocate. They are seeking a fee, not veterans benefits. While quite literally section 7263 requires the filing of a fee agreement when a "person" represents an "appellant" before the Court, that provision also permits—not requires—the

Court to review the fee agreement on its own motion or a motion of a party. We are now, on reconsideration, declining review because: (1) benefits are not sought; (2) the agreement is between two lawyers; and, I would add, (3) there is no "double dipping" EAJA application currently pending.

I write separately in this case because of a greater concern. The Court's experience in other cases over the past nine years convinces me that the time is ripe for a reexamination of the role of attorneys in the benefits adjudication process and whether this Court should have responsibility to oversee the matter of the fees charged by those attorneys. There are three reasons for my conviction.

One, though not necessarily the most important, is the rather atypical role thrust on the Court as an overseer of the limited relationship between a benefits claimant and an attorney. Section 7263(d) permits us only to reduce an unreasonable fee amount, and this despite the fact that the fee is the result of an agreement between the attorney and the client. One might suppose that in ruling that a provision is unenforceable, the ultimate effect of the Court action is a reduction in the amount of the fee due, thus our doing so is consistent with the limited authority vested in the Court by section 7263(d); however, even that supposition is not free from doubt.

In any event, our actions in appeals with regard to fee agreements have resulted in our venturing into the realm of advisory opinions, or at best, declaratory judgments, where we are not clearly required to go. Indeed, the U.S. Court of Appeals for the Federal Circuit has just affirmed this Court's eschewing the rendering of advisory opinions by affirming our dismissal of an appeal as moot upon the death of the veteran. *See Richard v. West*, 161 F.3d 719 (Fed.Cir.1998). In addition, there is even grave doubt, in my view, that we are equipped to undertake such declarations and reviews. Finally, since most fee agreements are arms-length contracts, there is a serious question as to whether our declaration of unenforceability would have an effect should suit be brought elsewhere under the contract. Where terms violate applicable law, I suppose it would not

do serious violence to section 7263(d) to construe that statute as permitting our oversight authority to allow a declaration of unenforceability, for what it may be worth.

Another troubling aspect of representation has to do with the limited role lawyers are permitted (or may be paid) to play in the adjudication of claims for veterans benefits. When judicial review was established ten years ago, there was apparently concern on the part of Congress that opening the door to lawyer representation, even in a limited way, was so fraught with potential peril that at least some oversight of the attorney-client relationship was necessary. As a result, filing and review of fee agreements were, respectively, required and permitted. Arguably, there are two reasons why the law in the past ten years has reluctantly allowed fee-for-service legal representation. The creation of the Court and its review authority introduced, for the first time, an adversarial process as an aspect of veterans claims adjudication. Secondly, the Congress might have anticipated that the pro bono services available at the regional office and Board of Veterans' Appeals levels of Department of Veterans Affairs (VA) would not usually be made available to disappointed claimants seeking to appeal to the Court. So the antiquated ten dollar limit on fees was scrapped for the no-fee-until-after-a-final-BVA-decision rule.

Why the perceived need effectively to restrict lawyer representation by proscribing the charging of fees prior to a BVA decision and the oversight of fee agreements by the Court? In the absence of any empirical or statistical data, one can only wonder whether Congress presumed that the bar would act unprofessionally or would replace the services offered gratis by veterans service groups? If the former, it is an unfounded indictment based on mistrust. If the latter, it is evidence of a desire to prevent the bar from trespassing upon protected turf. In either case, now that we have had nearly ten years of experience, a questioning of the basic premises is in order.

A third reason, and perhaps the most important one, may be gleaned from our over nine years of experience in reviewing BVA denials of benefits. The Court continues to see many appeals where, if counsel were realistically permitted to represent a claimant during the adjudication process before a final BVA decision, an appeal would be unnecessary or even seen as futile by the applicant. However, with the present restrictions on lawyer representation, an error at the VA level may not be discovered until years later, where with counsel it might well have been prevented at the outset. Thus, restricting realistic access to counsel until after a final BVA decision can cause years of delay both in adjudication before VA and in discovering the error through appellate litigation, only to have the matter returned to VA for readjudication. This happens in many appeals.

Effectively limiting lawyer representation until after a BVA final decision and after oversight of fee agreements is, quite arguably, unnecessarily paternalistic. Such was the thrust of comments and questions by Mr. Evans and Mr. Hutchinson at a February 12, 1998, hearing before the House Veterans Affairs Committee (HVAC):

> **Mr. Evans.** The court has indicated that a large number of unrepresented veterans before the court may be attributable to a claims system that "does not encourage attorney representation." Do you favor any actions that allow attorneys to collect fees, perhaps at an initial stage of their claim? For example, do you favor the practice of paying attorneys' fees directly from the veteran's passthrough award in order to encourage attorney representation, or any other practices that might encourage attorneys' participation in the process?

> **Judge Nebeker.** I understand the history has been that the veterans' benefit system has not wanted to have—well, I will use the expression "lawyerfied" at the base level. Being a lawyer, I don't necessarily share that view. We certainly get a great deal of assistance from the volunteer lawyers that come before our court, and in any way that lawyers could help, and I think they can, at the administrative level, it would certainly make for a more just system, and I think, ultimately a more rapidly developing system.

DEPARTMENT OF VETERANS AFFAIRS BUDGET REQUEST FOR FISCAL YEAR 1999: Hearing before the Comm. on Veterans' Affairs, House of Representatives (Serial No. 105–28), 105th Cong. 45 (1998) (colloquy with Hon. Lane Evans, U.S. House of Representatives).

This further exchange addressed a similar point.

**Mr. Hutchinson.** I practiced, to a limited extent, before coming to Congress, before the Court of Veterans Appeals and also the Board, and just to give you the benefit of my perception being an attorney in Arkansas. We have a high veterans population. Very, very few attorneys, probably less than five in Arkansas, have ever practiced before a court of veterans' appeals or actively do it; it might even be a shorter list than that. I can see good reason why they don't. You know, I handled a number of cases, but I don't think there was ever any money made, because of the stringent rules, the intimidation factor,. and basically whether you hope to have a fee at some point or not, it winds up being pro bono. I did it because I thought the veteran needed some help, but it is really not a good system. It discourages attorney representation, at least in the rural areas, such as Arkansas. Maybe they all need to go to Washington, DC to get a lawyer, but I don't think that is a good system either.

You know, another observation is that it seems to me that you have a system that encourages veterans just to continue pursuing their case for year after year after year after year, and no one will tell them it is not a good case. To me there is a problem here, and because there are so many cases being filed, unrepresented, and they pursue them, and they keep clogging up the system, that the meritorious cases have a much more difficult time ever being heard. And, Judge, I would just like you to respond to that. I mean, am I missing the mark, totally, on this?

**Judge Nebeker.** No sir; you haven't. I think it is a conscious policy to discourage lawyer representation at that level. Now, whether that is a policy choice or what, I don't know. I see that that is, in fact, the case, and true, there is not a lot of money in many of these cases, but there sometimes is. By the time the lawyers get into our court, even on a pro bono basis, we do have a substantial number who get fees under the Equal Access to Justice Act. Now that requires, one, that they prevail, and two, that the position of the Secretary was not substantially justified. There is a high rate of awards of EAJA fees in our court, but you are absolutely correct, it is not lawyer friendly at all, until the lawyers get to our court.

DEPARTMENT OF VETERANS AFFAIRS BUDGET REQUEST FOR FISCAL YEAR 1999: Hearing before the Committee on Veterans' Affairs, House of Representatives (Serial No. 105–28), 105th Cong. 51 (1998) (colloquy with Hon. Asa Hutchinson, U.S. House of Representatives).

To the extent that these colloquies demonstrate a Congressional interest in the issue of attorney representation of benefits claimants and the proper oversight role for the Court, I welcome them. The present law springs from a political judgment, influenced perhaps by both benevolent and possibly vested interests, which is now more than a decade old. In view of the lessons learned, I too submit that it is time to revisit the worth of the present system and the reasons for it.