FARLEY, Judge, filed the opinion of the Court. STEINBERG, Judge, filed an opinion concurring in part and dissenting in part. KRAMER, Chief Judge, filed a dissenting opinion.
FARLEY, Judge:
This is an appeal from the April 6, 1999, decision of the Board of Veterans’ Appeals (BVA or Board) which found that the total attorney fees charged by the appellant, attorney Kenneth M. Carpenter, for his representation of veteran Victor S. Weath-erspoon, were “excessive and unreasonable.” The BVA reduced the appellant’s fee to 20% of the past-due benefits awarded to his client. The Board also concluded that the appellant was legally bound to refund to Mr. Weatherspoon the fees awarded to him pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d). For the reasons that follow, the Court will affirm the decision of the Board in part and reverse in part.
I. BACKGROUND
The veteran served on active duty in the United States Army from July 1979 to September 1980. Record (R.) at 13. VA denied his claim for service connection for a nervous disorder in May 1981. R. at 35. In February 1993, Mr. Weatherspoon sought to reopen his service connection claim. R. at 79. In February 1994, he filed a VA Form 22a with the regional office (RO) appointing the appellant, Kenneth M. Carpenter, as his representative. R. at 46. The RO awarded the veteran service connection for bipolar affective disorder with chronic undifferentiated schizo *67 phrenia in May 1994, effective from February 12,1993. R. at 79.
In February 1995, the appellant filed, on behalf of the veteran, a claim for an earlier effective date for his service connection award on the basis of clear and unmistakable error (CUE) in the March 1981 RO decision. R. at 49-51. In April 1995, the RO determined that there was no CUE in the May 1981 RO decision and the Board affirmed. R. at 53-56, 76-86.
On May 1, 1997, the appellant filed a Notice of Appeal with this Court on behalf of the veteran. On the same date he filed with the Court a copy of a fee agreement entered into between him and the veteran. The agreement provided in pertinent part:
2. SCOPE AND DUTIES. Client [the veteran] hires Attorney [the appellant] to provide legal services in connection with appeal to U.S. Court of Veterans Appeals [now the U.S. Court of Appeals for Veterans Claims (Court)]. Attorney shall provide the following services: All services necessary to prosecute appeal to the [Court]. As a result of a decision by the [Court], the veteran’s case may be remanded and the Board of Veterans’ Appeals previous decision vacated. In the event of a court-ordered remand this agreement shall include representation of the veteran by the Attorney at both the Board of Veterans’ Appeals as well as any Regional Office of the Department of Veterans Affairs....
3. CONTINGENT FEE (DEPARTMENT OF VETERANS AFFAIRS CASES). Client agrees to pay a fee equal to thirty percent (30%) of the total amount of any past-due benefits awarded to Client, to include veteran, dependent or survivor benefits; on the basis of the Client’s claim with the Department of Veterans Affairs.... This representation is undertaken upon the following conditions:
c. The services contemplated under this contract before the [Court], Federal Circuit Court of Appeals, Board of Veterans’ Appeals, or Department of Veterans affairs Regional Office relate specifically to the claim or claims previously decided by the Board of Veterans’ Appeals.
4.EQUAL ACCESS TO JUSTICE ACT (EAJA) FEES. It is understood that in actions before the [Court], an application for attorney fees, costs and expenses may be filed on behalf of Client under EAJA in order to reimburse Client for attorney fees, costs and expenses which were required to be paid to protect Client from unreasonable governmental action. The recovery of reasonable attorney fees, costs and expenses for work performed on behalf of Client at the Court may be ordered. In the event of such Court-ordered award, such attorney fees, costs and expenses shall be payable directly to Attorney. It is understood and agreed that any attorney fees awarded under EAJA shall be the sole and exclusive property and entitlement of Attorney, for the services rendered to the Client for representation before the Court.... Attorney agrees that in the event the Court grants an award of benefits, if there is ultimate successful recovery of past-due benefits for Client, an offset will be made against the entitlement paid under the Attorney/Client Contingent Fee Contract of Attorney’s percentage of past-due benefits, in the amount of the sum of the attorney fees awarded by the Court under the provisions of EAJA. Client agrees that in the event the Court *68 remands veteran’s case, no offset will be made against the entitlement paid under the Attorney/Client Contingent Fee Contract of Attorney’s percentage of past-due benefits in the amount of the sum of the attorney fees awarded by the Court under the provisions of EAJA, if there is ultimate successful recovery of past-due benefits for Client.
R. at 89-90.
By letter dated May 1, 1997, the appellant also sent a copy of this fee agreement to the Board. The appellant’s letter stated that the fee agreement was being submitted to the Board “in the event of a remand from the [Court].” R. at 88. On July 3, 1997, the Deputy Chief Counsel for Legal Affairs of the BVA, by direction of the Chairman of the BVA, sent a letter to the appellant acknowledging receipt of the fee agreement. R. at 96. The letter also stated:
As we have previously discussed with you, paragraph 4 of your agreement, relating to fees under the [EAJA], appears to provide that fees awarded under EAJA will not be offset against your client’s fees if the [Court] remands Mr. Weatherspoon’s case and past-due benefits are awarded. This provision appears to be in violation of § 506(c) of Pub.L. No. 102-572 (Oct. 29, 1992), which provides that, when an attorney receives fees for the same work under both 28 U.S.C. § 2412(d) and 38 U.S.C. § 5904, the attorney shall refund the smaller amount to the client. The law does not appear to provide an exception where a case is remanded from the Court.
If you receive an EAJA fee and your client is awarded past-due benefits, we will take appropriate steps to review your fee agreement for reasonableness.

Id.

In February 1998, the Court granted the parties’ joint motion for remand of the veteran’s claim for an earlier effective date. R. at 110. On May 8, 1998, the Court awarded the veteran $2,473.17 in attorney fees and expenses pursuant to EAJA. See R. at 137. In August 1998, the Board found that there was CUE in the May 6, 1981, RO decision and awarded the veteran an effective date of January 20, 1981, for his service-connected psychosis. R. at 116-26. In September 1998, the RO implemented the Board’s decision and awarded the appellant $206,017.00 in past-due benefits. R. at 128-29,141-42.
In a letter dated November 17,1998, the Office of the Chairman of the BVA notified the appellant that because his fee agreement did not provide that his contingent fee be offset by the EAJA award, the Board was being directed to review his fee agreement for reasonableness pursuant to 38 U.S.C. § 5904(c)(2). The appellant filed a response in which he argued that the Board had no jurisdiction to review his fee agreement pursuant to 38 U.S.C. § 5904(c) and that, even if the Board did have jurisdiction, his fee, including the retention of the EAJA award, was reasonable. R. at 146-48. The appellant also argued that “the work performed by [his] office to secure the joint remand [was] entirely separate and apart from the work performed at the Board on remand.” R. at 147. Thus, the appellant argued, “The work performed at the [BVA] is not, and cannot as a matter of law, be considered the same work as performed before the Court.” R. at 148. The appellant also submitted a letter from the veteran stating that he considered the appellant’s fee to be fair, just, and reasonable under the circumstances. R. at 144.
In the BVA decision here on appeal, the Board found that the 30% contingency fee charged by the appellant was excessive and unreasonable and therefore reduced *69 the appellant’s fee to 20% of past-due benefits. The Board also found that the appellant’s retention of the EAJA fee awarded to the veteran for attorney fees for work performed before this Court, in addition to collecting the contingency fee, was unreasonable.
II. JURISDICTIONAL ISSUES
The appellant proposes several different theories in arguing that the Board’s decision should be vacated because the Board lacked jurisdiction to review his fee agreement. First, he contends that the fee agreement reviewed by the Board was initiated pursuant to 38 U.S.C. § 7263 which pertains to representation before the Court, rather than § 5904(c) which addresses representation before the Board and VA. Accordingly, he argues that the fee agreement is controlled by § 7263, and the Board, therefore, did not have jurisdiction to review it pursuant to § 5904(c). Second, the appellant urges that since the Court granted the parties’ joint motion for remand and awarded EAJA fees, the Court presumably reviewed the fee agreement for reasonableness pursuant to § 7263 and, through its silence, implicitly decreed the agreement reasonable. The appellant contends that this implicit conclusion is “the law of the case.” Finally, the appellant argues that even if the Board had the authority to review the fee agreement for reasonableness pursuant to § 5904(c)(2), the Board exceeded that authority by considering his “eligibility” for a fee when it determined that he must return the EAJA fee awarded by the Court to the veteran.

A. Section 5904.(c) and Section 7263

Section 5904(c) of title 38, U.S.Code provides, in pertinent part:
(2) A person who, acting as agent or attorney in a case referred to in paragraph (1) of this subsection, represents an appellant before the Department or the Board of Veterans’ Appeals after the Board first makes a final decision in the case shall file a copy of any fee agreement between them with the Board at such time as may be specified by the Board. The Board, upon its own motion or the request of either party, may review such fee agreement and may order a reduction in the fee called for in the agreement if it finds that the fee is excessive or unreasonable. A finding or order of the Board under the preceding sentence may be reviewed by the United States Court of Appeals for Veterans Claims under section 7263(d) of this title.
Section 7263 of title 38, U.S.Code provides, in pertinent part:
(c) A person who represents an appellant before the Court shall file a copy of any fee agreement between the appellant and that person with the Court at the time the appeal is filed. The Court, on its own motion or on the motion of any party, may review such fee agreement.
(d) In reviewing a fee agreement under subsection (c) of this section or under section 5904(c)(2) of this title, the Court may affirm the finding of the Board and may order a reduction in the fee called for in the agreement if it finds that the fee is excessive or unreasonable.
The fee agreement at issue in this matter was entered into after the Board made a final decision in the veteran’s case and was filed with this Court at the time the appeal was filed. The agreement not only addressed representation before this Court, but also specifically provided for representation before the Board and the Department of Veterans Affairs in the event this Court remanded the veteran’s claim. In contemplation of that possibility, *70 the appellant filed a copy of the fee agreement with the Board on the same date he filed the agreement with the Court, “in the event of a remand from the [Court].” R. at 88. By filing this one fee agreement with the Court and the Board, the appellant complied with the requirements of both § 5904(c) and § 7263(c). Because the fee agreement filed with the Board satisfied the requirements of § 5904(c), the Board had the authority to review the fee agreement pursuant to that subsection.
The fact that this Court had the opportunity to review the fee agreement pursuant to § 7263 is not a bar to the Board’s review of the agreement. Section 7263 authorizes the Court, on its own motion or on the motion of any party, to review a fee agreement filed with the Court; it does not require us to do so. See 38 U.S.C. § 7263(c) (“The Court ... may review such fee agreement.”) (emphasis added); see also Lewis v. Brown, 5 Vet.App. 151, 154 (“[T]he Court will not ordinarily review sua sponte every fee agreement.”). Neither party made such a motion, and the Court did not undertake a review on its own. The Court agrees that had the Court reviewed the fee agreement as it pertained to work before this Court pursuant to § 7263(d), the Board would have been precluded from reviewing at least that portion of the fee agreement. Cf. Smith v. Brown, 35 F.3d 1516, 1526 (Fed.Cir.1994) (declining to interpret a regulation in such a way that would, “oddly, permit an inferior to collaterally review the actions of a superior.”). However, the Court’s silence on the reasonableness of the fee agreement cannot be said to be an implicit holding that the agreement was, in fact, reasonable and the Board was free to review the agreement properly before it pursuant to 38 U.S.C. § 5904(c).
Additionally, the Board was free to review the entire fee agreement properly before it, and was not required to limit its review to only that portion that pertained to work before the BVA. Section 5904(c)(2) requires that an attorney representing a claimant before the Board or VA file a copy of his or her fee agreement with the Board. The statute further authorizes the Board to review “such agreement” for reasonableness. Such fee agreements will often encompass work performed before the Board, VA, and the Court (as was the case with this fee agreement). We find nothing in the language of § 5904(c) or § 7263 to require the Board to dissect a fee agreement to review only that portion pertaining to work performed before the Board or to so limit the Board’s scope of review. In fact, when read together, these two sections operate to ensure that if the Court does not first review a fee agreement, the Board may review the agreement upon a remand of the claim, and that decision will be subject to de novo review by this Court. See 38 U.S.C. §§ 5904(c), 7252, 7263(d); In re Vernon, 8 Vet.App. 457, 459 (1996) (“[I]n conducting a review of a fee agreement, a finding by the Board regarding the excessiveness or unreasonableness of the fee is entitled to no deference.”); see also 38 C.F.R. § 20.609(i) (a reduction in fees may be ordered by the Board even after payment has been made to the attorney; in such a case, the attorney must refund any overpayment to the client).

B. Reasonableness vs. Eligibility

The appellant contends that, even if the Board did have jurisdiction to review this fee agreement pursuant to § 5904(c), the Board exceeded its jurisdiction because it considered not only the reasonableness of his fee but also his eligibility to collect a fee. In Scates v. Gober, this Court held that “all issues involving enti *71 tlement or eligibility for attorney fees under direct-payment contingency-fee agreements, as contrasted with the issues of reasonableness and excessiveness, must first be addressed by the RO in accordance with the normal adjudication procedures.” 14 Vet.App. 62, 64 (2000) (en banc) (emphasis added). The appellant urges this Court to extend our holding in Scates to non-direct-payment contingency-fee agreements, like the one at issue in this matter.
As the appellant points out, the jurisdiction of the Board and the Court to review fee agreements pursuant to §§ 5904(c) and 7263 is narrow. See, e.g., Cox v. West, 149 F.3d 1360, 1364 (Fed.Cir.1998) (“By its terms, section 5904(c)(2) only gives the Board limited jurisdiction to review the reasonableness of a fee and to reduce the fee.”); In re Wick, 40 F.3d 367, 371 (Fed.Cir.1994) (“[T]he court’s review of fee agreements under § 7263 is strictly limited by the language of the statute.... [T]he court is authorized only to ‘order a reduction in the fee called for if it finds the fee is excessive or unreasonable.’ ”); Scates, supra. In Cox, Wick, and Scates, this Court and the U.S. Court of Appeals for the Federal Circuit held that, because the reasonableness of the fee charged by each attorney was not at issue, neither § 5904(c) nor § 7263 could serve as a jurisdictional basis for the Board or the Court’s review of the fee agreements. In each of those cases, the issue presented was the attorney’s eligibility to collect a fee.
An attorney can be eligible to collect a fee pursuant to a fee agreement and still pursue an award of statutory fees on his Ghent’s behalf. See Venegas v. Mitchell, 495 U.S. 82, 86-87, 110 S.Ct. 1679, 109 L.Ed.2d 74 (1990) (the attorney fee provision of the Civil Rights Act, 42 U.S.C. § 1988, does not preclude attorneys from contracting with their clients for fees in addition to the amount awarded by the court). However, this Court has found that fee agreements which do not provide for an offset of attorney fees paid by the veteran by the amount of any EAJA award for the same work are unreasonable. Shaw v. Gober, 10 Vet.App. 498, 505 (1997) (holding that a fee agreement was “ ‘unreasonable’ on its face to the extent that it may be read as precluding an offset where the Court remands with a direction that the BVA award benefits that the Court finds are required as a matter of law”); see also In re Mason, 11 Vet.App. 514, 516 (1998) (Court found “ ‘unreasonable’ on its face” a fee agreement provision precluding reimbursement of costs and expenses to client when EAJA settlement is less than the full amount); Wingo v. West, 11 Vet.App. 307, 312-13 (1998) (same). The Board did not find that the attorney was ineligible to collect a fee pursuant to his fee agreement or EAJA, but considered instead whether the portion of the fee agreement which provided for the attorney’s retention of both fees was unreasonable. Accordingly, the Board’s review of the fee agreement in this matter did not exceed its jurisdiction to review the fee agreement for reasonableness pursuant to § 5904(e), and therefore we find no occasion to consider the appellant’s request for an extension of Scates.

C. The Jurisdiction of the Court

The jurisdiction of the Court of [Appeals for Veterans Claims] is specifically defined by statute at 38 U.S.C. § 7252, in a provision entitled “Jurisdiction; finality of decisions.” That provision states: “The Court of [Appeals for Veterans Claims] shall have exclusive jurisdiction to review decisions of the Board of Veterans’ Appeals .... The Court shall have poiver to affirm, modify, or reverse a decision of the Board or to remand the *72 matter, as appropriate.” 38 U.S.C. § 7252 (emphasis supplied). In determining the jurisdiction conferred by § 7252, we are mindful that “[j]urisdic-tional statutes are to be construed ‘with precision and with fidelity to the terms by which Congress has expressed its wishes’.” Palmore v. United States, 411 U.S. 389, 396, 93 S.Ct. 1670, 1675, 36 L.Ed.2d 342 (1973) (quoting Cheng Fan Kwok v. INS, 392 U.S. 206, 212, 88 S.Ct. 1970, 1974, 20 L.Ed.2d 1037 (1968)).
In re Wick, 40 F.3d at 370; see also 38 U.S.C. § 7261 (defining the Court’s scope of review). In addition, Congress authorized this Court to “‘review’ fee agreements between an appellant and a person representing the appellant before the [C]ourt when an appeal is properly before the [C]ourt and when a copy of the fee agreement has been filed with the [CJourt at the time the appeal is filed.” In re Wick, 40 F.3d at 371; 38 U.S.C. § 7263. In such instances, § 7263(d) gives the Court the additional authority to “affirm the finding of the Board and ... order a reduction in the fee called for in the agreement if it finds that the fee is excessive or unreasonable.”
“[F]ee agreements are properly before the court ... when it reviews decisions of the Board concerning an agreement or on any other matter decided by the Board.” In re Wick, 40 F.3d at 371. Before this Court is an April 6, 1999, decision of the Board regarding the reasonableness of the fee called for in a fee agreement between the appellant and the veteran. That decision was appealed to this Court by the appellant. Thus, this Court has jurisdiction over the April 6, 1999, BVA decision pursuant to 38 U.S.C. § 7252 and the fee agreement between the appellant and his client is “properly before the [Cjourt” for our review. Id.
III. THE REASONABLENESS OF NO OFFSET FOR EAJA FEES
The fee agreement at issue in this matter stated that in the event the Court ordered an award of benefits, the attorney’s fee would be offset by any fees awarded to the veteran pursuant to EAJA. However, if the Court remanded the claim, the agreement stated that no such offset would be made. Since the veteran’s claim was indeed remanded, pursuant to the fee agreement no offset of the fee was to be made.
Relying upon section 506(c) of the Federal Courts Administration Act of 1992 (FCAA), the Board found that when an attorney receives fees for the same work under both 38 U.S.C. § 5904 and EAJA, the attorney must refund the smaller fee to his or her client. See Pub.L. No. 102-572, 106 Stat. 4506 (Although “[sjection 5904(d) of title 38, United States Code, shall not prevent an award of fees under [EAJA], ... where a claimant’s attorney receives fees for the same work under both section 5904 ... and [EAJA] the claimant’s attorney refunds to the claimant the amount of the smaller fee.”). Therefore, the Board concluded that the appellant must refund to the veteran the EAJA fee awarded by the Court.
Although the applicability of § 506(c) of the FCAA is “doubtful” with respect to a fee agreement reviewed pursuant to § 5904(c), as opposed to § 5904(d), which is specifically mentioned in § 506(c),
the policy underlying the proscription in section 506 against double payment for the same legal work is inherent in the policy against an ‘unreasonable’ fee embodied in sections 5904(c)(2) and 7263(d) and thus would be enforceable by the Court through a finding that a fee-agreement provision providing for such double payment is unreasonable.
*73 Shaw v. Gober, 10 Vet.App. 498, 503-04 (1997). Therefore, while the Board’s direct reliance upon § 506(c) of the FCAA may have been error, this Court has held that the collection of double payments for the same work would be unreasonable and a fee agreement permitting such a collection would be unenforceable. See id.
[E]ven if section 506 does not apply to a fee agreement, such as is involved in this case, that does not provide, under section 5904(d), for direct payment by the Secretary of a contingent fee of 20% or less of past-due VA benefits, the policy underlying the proscription in section 506 against double payment for the same legal work is inherent in the policy against an “unreasonable” fee embodied in sections 5904(c)(2) and 7263(d) and thus would be enforceable by the Court through a finding that a fee-agreement provision providing for such double payment is unreasonable under 38 U.S.C. § 7263(d). That policy is divined from the legislative history of section 206 of Pub.L. No. 96-481, 94 Stat. 2321, 2330 (1980), as amended by Pub.L. No. 99-80, § 3, 99 Stat. 183, 186 (1985) (found at 28 U.S.C. § 2412 note) relating to the Social Security Act (SSA) [hereinafter section 206 relating to SSA], That SSA provision contains language that essentially mirrors that found in FCAA § 506(c). The legislative history of section 206 relating to SSA explained: “Without this amendment [precluding an attorney for a Social Security or Supplemental Security Income (SSI) claimant from receiving both EAJA and SSA fees] it was argued, ‘double dipping’ was possible. Such double payments are inappropriate and deprive[ ] the plaintiff of the benefits intended by EAJA.” H.R.Rep. No. 99-120, 99th Cong. 1st Sess. at p. 20, 1985 U.S.Code Cong. & Ad.News at 148-49 (1985) (EAJA Extension and Amendment) (Section by Section Analysis describing section 3 of H.R. 2378, which was identical to provision ultimately enacted in Pub.L. No. 99-80); see Wells v. Bowen, 855 F.2d 37, 42 (2d Cir.1988) (“Congress clearly intended the two statutes to work in conjunction and that dual fee applications [under the SSA and EAJA] are not improper as long as the lesser of any two amounts awarded goes to the attorney’s client”; indeed, “attorney working under contingent-fee agreement can best defray the client’s cost of legal services by seeking both EAJA and SSA fees”.). The House Committee report stated that, although the attorney would be permitted “to seek recovery under both authorizations [the EAJA and SSA] ... [, t]he attorney ... may keep the larger fee, but must return the amount of the smaller fee to the claimant.” H.R. Rep. 99-120, 99th Cong. 1st Sess. at p. 20, 1985 U.S.Code Cong. & Ad.News at p. 149.
Shaw, 10 Vet.App. at 504. Thus, a fee agreement allowing an attorney to collect and retain both an EAJA fee as well as a fee from the client for the same work is “unreasonable” pursuant to 38 U.S.C. §§ 5904 and 7263.
In Shaw, the fee agreement at issue, like the fee agreement in this matter, stated that there would be no offset of an EAJA award where the Court remanded the claim. The Court held that the fee agreement was “ ‘unreasonable’ on its face to the extent it may be read as precluding an offset where the Court remands with a direction that the BVA award benefits that the Court finds are required as a matter of law.” 10 VetApp. at 505. However, the Court also held that “the double-payment proscription would have no application to the payment of fees under the EAJA and under the fee agreement where the legal work done in connection with those fees is *74 not the same.” Id. at 504. The Court then concluded that it was “clear on the face of the appellant’s contentions in his substantive brief that any legal representation on remand [would] be different from that performed [at the Court] because in the Court proceedings the appellant’s counsel sought only a remand to the Board and did not seek reversal of the Board decision.” Id. “Accordingly, [the Court found that] the offset issue was not presented by the facts of this case because [it was] not a case where the appellant’s counsel [was] seeking fees, under the fee agreement and the EAJA, for the ‘same work.’ ” Id.
The concept that work performed before this Court and on remand to the Board and VA is not necessarily the “same work” was the subject of this Court’s decision in Fritz v. West, 13 Vet.App. 190 (1999). In Fritz, the Court again considered the reasonableness of a provision in a fee agreement that no offset of an EAJA award would be made where the Court remanded the claim. On the merits of the veteran’s appeal, the Court had granted the parties’ joint motion for remand, vacated the Board’s decision, and remanded the claim for readjudication. 13 Vet.App at 191. The Court held that the fee agreement was not unreasonable on its face pursuant to Shaw, supra, because the fee agreement did not preclude an offset where the Court reverses and remands for an award of benefits. Id. at 194. The Court noted that “[u]nder Shaw, an attorney generally may retain an entire contingency-fee amount if the representation provided before the BVA/VA subsequent to the attorney’s work before the Court involves obtaining more relief from the department than2 what the appellant received from the Court.” Id. The Secretary had argued that the EAJA award required an offset because “inasmuch as the contingent fee contemplates a single sum in payment for services provided both before the Court and in any post-remand proceedings before VA, it is not clear to what extent the contingency fee may be duplicative of the EAJA award for services before the Court only.” Id. The Court rejected this argument. Relying upon this Court’s decision in In re Mason, (13 Vet.App. 79 (1999)) the Court held:
[W]here the attorney claims the contingency fee for the representation provided in this Court, it would appear that any EAJA award for such representation would result in an offset against the contingency fee owed under the agreement. On the other hand, if the attorney claims the contingency fee for the representation provided before the BVA/VA, resulting in an award of benefits beyond the relief awarded by the Court, it would appear that no offset would be required.
13 Vet.App. at 194. The Court, in Fritz, therefore held that the attorney-fee-offset provisions in the fee agreement were not objectionable in the context of that case. Id. at 194. Thus, it appears that we have by our decisions in Shaw and Fritz crafted a narrow interpretation of the term “work,” leaving open an opportunity for the subversion of the very purpose of EAJA.
“Congress passed the EAJA in response to its concern that persons ‘may be deterred from seeking review of, or defending against, unreasonable governmental action because of the expense involved in securing vindication of their rights.’ ” Sullivan v. Hudson, 490 U.S. 877, 883, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989). “ ‘The objective of EAJA is to eliminate financial deterrents to individuals attempting to defend themselves against unjustified government action. Veterans are among the types of individuals the statute was intended to help.’ ” Abbs v. Principi, 237 F.3d *75 1342, 1347 (Fed.Cir.2001) (quoting H.R. Rep. No. 102-1006, at 25 (1992), U.S.Code Cong. & Admin.News 1992, 3921 at 3934). EAJA awards belong to the claimant, not his or her attorney. “[T]he law gives the EAJA cause of action and standing to the client, not the attorney, and the attorney cannot amend the law by bestowing such standing on the attorney.” Shaw, 10 Vet.App. at 506 (holding that a fee-agreement provision requiring client to execute “any and all” EAJA documents necessary to permit receipt of the EAJA award by the attorney “ ‘unreasonable’ on its face” because it conflicted with the plain language of EAJA which provides awards to a “party,” not an attorney); see also Curtis v. Brown, 8 Vet.App 104, 108-09 (1995) (“EAJA fees awarded where the attorney was paid by fee agreement ... go first to reimburse the appellant the amount paid to the attorney pursuant to the agreement”). The purpose of EAJA is not to provide an attorney a greater fee than contemplated by his fee agreement. “[T]he policy of [EAJA] is to pay non-enhanced fees for legal services actually rendered.” Phillips v. General Services Admin., 924 F.2d 1577, 1583 (Fed.Cir.1991) (emphasis added). Moreover, we must be constantly mindful that in this “uniquely pro-claimant adjudicatory system,” protecting the interests of the veteran is paramount. See, e.g., Hayre v. West, 188 F.3d 1327, 1333 (Fed.Cir.1999); cf. Hodge v. West, 155 F.3d 1356, 1362 (Fed.Cir.1998) (“[The U.S. Court of Appeals for the Federal Circuit] and the Supreme Court both have long recognized the character of veterans’ benefits statutes is strongly and uniquely pro-claimant.”). Thus, we must be particularly vigilant in construing fee agreements to protect the veteran from the drafting of a fee agreement which might unintentionally, or intentionally, deprive a veteran of his rights under the law.
The compensation the appellant agreed to accept for his services was “thirty percent (30%) of the total amount of any past-due benefits awarded to Client ... on the basis of the Client’s claim with the Department of Veterans Affairs.” R. at 90 (emphasis added). He agreed “to provide legal services [to the veteran] in connection with [his] appeal to the [Court].” R. at 89. The fee agreement specifically provided that the work to be performed would include “[a]ll services necessary to prosecute appeal to the [Court and] ... [i]n the event of a court-ordered remand this agreement shall include representation of the veteran by the Attorney at both the Board of Veterans’ Appeals as well as any Regional Office of the Department of Veterans Affairs.” Id.
The portion of the agreement discussing the contingency fee repeatedly described the payment as it pertained to the veteran’s “claim or claims,” and made no differentiations as to work to be performed before the Court, Board, or VA. In the EAJA portion of the fee agreement, however, the agreement did make such differentiations. Although the cost to the veteran of the 30% fee would be deferred by any amount awarded by the Court pursuant to EAJA in the event the Court awarded past-due benefits, the agreement carved out an exception where, in the event the Court remanded the claim, the 30% fee would actually be supplemented by any EAJA fee awarded. The Court did remand the veteran’s claim, and past-due benefits were awarded on remand. Thus, the appellant collected a fee equal to 30% of the past-due benefits plus the EAJA fee awarded to the veteran. This, of course, resulted in no greater cost to the veteran; however, it stripped the veteran of his right pursuant to EAJA to have his legal fees paid, at least in part, by the United States.
*76 To be ultimately successful on the veteran’s claim, i.e., securing an award of past-due benefits, the attorney contemplated and advised his client of the possibility of a remand and the agreement provided for representation on remand. If we were to consider the appellant’s representation of the veteran before the Board on remand different “work” than that performed here, we would improperly be allowing the EAJA fee to enhance the appellant’s fee, rather than to reimburse the veteran for the cost of representation. See Curtis, supra. If there is any room for interpretive doubt as to what constitutes the “same work” for the purposes of EAJA, such doubt must be resolved in the veterans’ favor. See Brown v. Gardner, 513 U.S. 115, 118, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994). Thus, we must conclude that the representation of a claimant in pursuit of a claim at all stages of the adjudication process is the “same work,” regardless of the tribunal before which it is performed. Therefore, the Court holds that a fee which includes both an EAJA award plus a contingency fee for work performed before the Court, Board, and VA on the same claim such that the fee is enhanced by an EAJA award is unreasonable pursuant to 38 U.S.C. §§ 5904(c) and 7263. Any previous decisions of this Court to the contrary are hereby overruled. To the extent the fee agreement here provides that any portion of the EAJA award will not be offset against the fee paid, or to be paid, by the veteran to the appellant, the appellant’s fee is “excessive and unreasonable.” Accordingly, pursuant to 38 U.S.C. § 7263, the Court will affirm the Board’s finding that the attorney is not entitled to retain the EAJA award.
IV. THE REASONABLENESS OF THE 30% CONTINGENCY FEE
The Court, like the Board, is vested with the power to review fee agreements; however, the Court has concluded that it “should intrude upon such a free and voluntary contract only upon the invitation of the parties or where the fee agreement is patently unreasonable on its face.” Lewis, 5 Vet.App. at 154 (emphasis added); see also In Re Mason, 12 Vet.App. 135, 136-38 (1999) (Nebeker, Chief Judge, concurring.). In an attempt to entice attorneys to represent veterans, 38 U.S.C. § 5904(d) made it possible for the attorneys to be paid directly by the Secretary, but limited the fee the attorney could charge under a § 5904(d) agreement to 20% of any past-due benefits awarded to the veteran. However, the provisions of § 5904(d) were made neither exclusive nor mandatory and attorneys are free to enter into fee agreements that do not meet the requirements of § 5904(d), but in such instances they must collect their fees directly from their clients without the assistance of the Secretary. The only statutory limits on fees pursuant to non-direct-pay fee agreements are that an attorney cannot charge for services performed prior to entry of a final decision by the Board and the fee cannot be “excessive or unreasonable.” See 38 U.S.C. § 5904(c)(1) and (2). However, the mere fact that a fee pursuant to a non-direct-pay fee agreement exceeds the 20% does not make it “patently unreasonable on its face” such that there should be an “intru[sion]” into the agreement entered into by the attorney and his client. Compare Silverman v. Brown, 7 Vet.App. 487 (1995) (Court reviewed fee agreement calling for a fee “not to exceed 50% of benefits awarded” plus “additional reasonable compensation”) with Matter of Fee Agreement of Smith, 4 Vet.App. 487, 499 (1993) (Court found fee of $1,000 plus a 20% contingency fee not “excessive or unreasonable”). With respect to the BVA’s review of fee agreements, the Court commented soon after its inception that
*77 [i]n a very real sense, the parties to a review of a fee agreement are the claimant on the one hand and the attorney on the other. Rather than performing as an advocate, the BVA serves in a quasi-judicial role. Under these circumstances, when review of a fee agreement is statutorily authorized, we think it appropriate, indeed necessary, that the BVA provide notice to the claimant as well as to the claimant’s attorney of its intention to review a fee agreement and of its ultimate decision.
Nagler v. Derwinski, 1 Vet.App. 297, 304 (1991).
The record in this matter indicates that the appellant was advised that the Board’s review of the fee agreement was initiated because of a concern that the appellant was attempting to retain both the contingency fee and the EAJA fee awarded to the veteran. In the July 3, 1997, letter, Thomas D. Roberts, Deputy Chief Counsel for Legal Affairs, concluded: “If you receive an EAJA fee and your client is awarded past-due benefits, we will take appropriate steps to review your agreement for reasonableness.” R. at 96. In his letter of November 17, 1998, Mr. Thomas wrote:
Because your fee agreement does not provide that your contingent fee payment from past-due benefits is to be offset by an EAJA award concerning your Court work, we are asking the Board to review your fee agreement with Mr. Weatherspoon for reasonableness on its own motion, pursuant to 38 U.S.C. § 5904(c)(2).
R. at 141. On the record before the Court, at no time was the appellant advised that the fee agreement was going to be reviewed for reasonableness of the 30% contingency fee.
As demonstrated in Part III of this opinion, the Board’s concern about the lack of an EAJA offset was legitimate and its review in that regard proper. An artfully or inartfully drafted contingency fee agreement which would circumvent the letter and spirit of EAJA would be “patently unreasonable on its face.” However, the Board’s actual review of the fee agreement and its ultimate decision were far more expansive than that directed by the Chairman or described in the letters to the appellant.
The Board found that the 30% contingency fee provided for by the fee agreement was excessive and unreasonable and therefore reduced the fee to 20% of past-due benefits awarded. In determining that the 30% contingency fee was unreasonable, the Board stated:
A review of the record demonstrates that the extent and type of services the attorney performed since March 1997 included negotiating and assisting in drafting a joint motion for remand, writing a letter dated February 26, 1998, to the Adjudication Officer at the RO, and writing a June 2, 1998[,] five-page document with additional argument in support of the veteran’s appeal and submitting it to the Board. It is also very likely that in the months between the March 1997 Board decision and the August 1998 Board decision, the attorney had several contacts with the veteran. However, in the additional arguments from the attorney, contained in the letter dated December 11, 1998, the attorney does not itemize or otherwise indicate that any other legal services were performed to justify fees over $60,000.00.
R. at 6. The appellant argued that there was no factual or legal basis to conclude that his fee was unreasonable; the Board disagreed, stating:
As noted above, there is no evidence of legal services provided after the March *78 1997 Board decision which justify such an excessive fee. There is no evidence of record as to the number of hours the attorney and his staff worked on this case from March 1997 to August 1998. In his December 1998 letter, the attorney has not alleged that he and his staff worked an inordinate amount of hours on this case. In assessing the reasonableness of his fee, the Board notes that if an attorney were to charge $200 per hour for legal services, it would require 309 hours of work to constitute a fee of $61,800.00. The evidence available of the legal services the attorney provided the veteran between the final Board decision in March 1997 and the August 1998 Board decision does not justify a fee of $61,805.10, and the Board finds that the fee is “excessive and unreasonable.”
R. at 7. Noting that VA regulations provide that a fee of 20% of past-due benefits is presumed reasonable, the Board then concluded that, in this matter, “[ajlthough the evidence does not demonstrate that the attorney and his staff spent a great deal of time on this case between March 1997 and August 1998, the other factors in determining whether fees are reasonable support a determination that a fee of 20 percent of past-due benefits is reasonable.” Id.
Pursuant to 38 C.F.R. § 20.609(e), factors to be considered by the Board in determining whether fees are reasonable include:
(1) The extent and type of services the representative performs;
(2) The complexity of the case;
(3) The level of skill and competence required of the representative in giving the services;
(4) The amount of time the representative spent on the case;
(5) The results the representative achieved, including the amount of any benefits recovered;
(6) The level of review to which the claim was taken and the level of the review at which the representative was retained;
(7) Rates charged by other representatives for similar services; and
(8) Whether, and to what extent, the payment of fees is contingent upon the results obtained.
The Court reviews the Board’s decisions regarding the reasonableness of a fee agreement de novo. See In re Vernon, 8 Vet.App. at 459 (“[I]n conducting a review of a fee agreement, a finding by the Board regarding the excessiveness or unreasonableness of the fee is entitled to no deference.”).
The appellant argues that the Board improperly interpreted 38 C.F.R. § 20.609(f) as establishing a presumption that a reasonable fee is limited to no more than 20% of past-due benefits, and that in order to charge a greater fee, the attorney must rebut that presumption. The Court agrees that this would be an improper application of 38 C.F.R. § 20.609(f) (“Fees which total no more than 20 percent of any past-due benefits awarded ... will be presumed reasonable.”). However, upon close inspection of the Board’s decision, it appears the Board did not apply § 20.609(f) until after it reduced the 30% fee to 20%. The Board then acknowledged that a 20% fee would be presumed reasonable, but applied the factors set forth in 38 C.F.R. § 20.609(e) to determine whether the presumption had been rebutted and a fee even lower than 20% was justified. In considering these factors the Board found that (1) “the case was quite complex”; (2) “the attorney demonstrated skill and competency”; (3) “the results, including the amount of benefits recovered, were very beneficial *79 to the veteran”; and (4) “the amount of benefits recovered was a very large sum.” R. at 8. The Board therefore concluded that the other factors supported a determination that a fee of 20% of past-due benefits was reasonable, and that the § 20.609(f) presumption that a 20% fee is reasonable had not been rebutted. R. at 7-8; see also 38 C.F.R. § 20.609(f). Thus, because the appellant was not prejudiced by the Board’s use of § 20.609(f), we need not address whether it was correctly applied.
Turning to the Board’s reduction of the fee from 30% to 20% of past-due benefits, it is apparent to the Court that the Board was struck by the total amount of the fee and focused primarily on the number of hours the attorney and his staff spent on this case. Although the number of hours spent is one factor to be considered in determining whether a fee is reasonable, particularly where an agreement calls for an hourly fee, it is not the only or indeed the primary factor in the case of a contingency fee agreement. An attorney taking a case on a contingent basis may earn a large fee for very few hours; however, that same attorney also takes the risk that he will receive no fee, regardless of the number of hours spent on a case. In essence, the attorney agrees to share the risk of not prevailing on the claim with his client. Based upon nothing more than a lack of evidence that the appellant spent an “inordinate” amount of time on this matter, the Board determined that the appellant’s fee should be reduced to 20% of the past-due benefits awarded. In doing so, the Board erred.
There is simply no basis in the record for the Board’s reduction of the appellant’s fee from 30% to 20%. On the contrary, as the Board explained in support of its decision not to reduce the 20% fee even lower, several of the 38 C.F.R. § 20.609(e) factors actually support the conclusion that the appellant’s 30% contingency fee is not “excessive and unreasonable,” e.g., the case was complex; the attorney was quite competent; he achieved a great deal of success for his client; and the amount awarded was a very large sum. See R. at 8. Moreover, the payment of fees was entirely “contingent upon the results achieved.” See 38 C.F.R. § 20.609(e)(8). Therefore, pursuant to 38 U.S.C. § 7263, the Court holds on de novo review that the 30% contingency fee contemplated by the fee agreement entered into by the appellant and his client is not “excessive or unreasonable.” See In re Vernon, supra. Accordingly, the April 6, 1999, decision of the Board will be and is reversed to the extent that it reduced the appellant’s fee below the 30% of past-due benefits called for in the fee agreement. See 38 U.S.C. § 7252(a). Although the Board, like the Court, is vested with the power to review fee agreements, the Court trusts that the Board will in the future exercise its authority judiciously, with attention to the seriousness of the intrusion that such a review entails and full notice to all concerned, and “only upon the invitation of the parties or where the fee agreement is patently unreasonable.” See Lewis, 5 Vet.App. at 154; see also Nagler, supra.
V. CONCLUSION
Upon consideration of the foregoing, the April 6, 1999, decision of the Board is AFFIRMED IN PART and REVERSED IN PART.